IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNIVERSITY OF VIRGINIA PATENT FOUNDATION,<br><br>        Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY d/b/a GE HEALTHCARE,<br><br>        Defendant and Counterclaimant. | CASE NO.: 3:08-cv-00025-nkm |

**DEFENDANT GENERAL ELECTRIC COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO LIABILITY PRIOR TO THE ISSUANCE OF THE REEXAMINATION CERTIFICATE**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ........................................................................................................2

    A.    The Original '282 Patent Is Directed to MRI Pulse Sequence Cycles Containing a "Magnetization Recovery Period." ......................................................2

    B.    The Patent Foundation Amended the '282 Patent During Reexamination to Overcome the Examiner's Rejection of Claims as Invalid in Light of Prior Art. .................................................................................................................3

ARGUMENT ..................................................................................................................................5

I.    PARTIAL SUMMARY JUDGMENT IS APPROPRIATE. ............................................5

II.    THE PATENT ACT SHIELDS GE FROM ALLEGED LIABILITY FOR ACTIVITIES UNDERTAKEN BEFORE THE ISSUANCE OF THE REEXAMINATION CERTIFICATE IN THIS CASE. ......................................................6

    A.    When the Scope of a Patent Claim Is Substantively Changed During Reexamination, There Can Be no Liability for Alleged Infringement Prior to the Issuance of the Reexamination Certificate. ...................................................6

    B.    The Patent Foundation Substantively Narrowed All of the Patent Claims During Reexamination. ...............................................................................................8

        1.    Claim 1 of the Original '282 Patent Covered Embodiments Where the Magnetization Recovery Period Has a Time of Zero. ...........................8

        2.    The Patent Foundation's Actions During Reexamination Substantively Changed the Scope of Claim 1 by Surrendering Coverage Where the Magnetization Recovery Period Has a Time of Zero. ....................................................................................................9

        3.    The Patent Foundation Substantively Changed the Scope of All Other Claims by Substantively Changing the Scope of Claim 1 and Cancelling Claim 4. ..................................................................................13

CONCLUSION .............................................................................................................................13

## TABLE OF AUTHORITIES

                    **Page**

### Cases

*Abbey v. Bill Ussery Motors, Inc.*,
   74 F. Supp. 2d 1217 (S.D. Fla. 1999) .................................................................... 11,13

*Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*,
   552 F. Supp. 2d 620 (N.D. Tex. 2008) ......................................................................... 5

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*,
   92 F. Supp. 2d 483 (E.D. Va. 2000) ............................................................................. 8

*Bloom Eng'g, Co., Inc. v. North Am. Mfg. Co., Inc.*,
   129 F.3d 1247 (Fed. Cir. 1997) ........................................................................ 5,6,7,10

*Cerner Corp. v. Visicu, Inc.*,
   667 F. Supp. 2d 1062 (W.D. Mo. 2009) ....................................................................... 5

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
   192 F.3d 973 (Fed. Cir. 1999) ............................................................................. 7,10,12

*EMI Group N. Am., Inc. v. Cypress Semiconductor Corp.*,
   68 F. Supp. 2d 421 (D. Del. 1999) ............................................................................... 8

*Engineered Data Prods., Inc. v. GBS Corp.*,
   506 F. Supp. 2d 461 (D. Colo. 2007) ........................................................................... 7

*Fortel Corp. v. Phone-Mate, Inc.*,
   825 F.2d 1577 (Fed. Cir. 1987) .................................................................................. 13

*Haynes Int'l, Inc. v. Jessop Steel Co.*,
   8 F.3d 1573 (Fed. Cir. 1993) ...................................................................................... 12

*Hester Indus., Inc. v. Stein, Inc.*,
   142 F.3d 1472 (Fed. Cir. 1998) .................................................................................. 12

*Hoffer v. Microsoft Corp.*,
   405 F.3d 1326 (Fed. Cir. 2005) .................................................................................... 8

*Laitram Corp. v. NEC Corp.*,
   163 F.3d 1342 (Fed. Cir. 1998) ........................................................................ 7,10,11,12

*Neupak, Inc. v. Ideal Mfg. and Sales Corp.*,
   41 Fed. Appx. 435 (Fed. Cir. 2002) ..................................................................... 6,7,11

*Oak Indus. v. Zenith Elec. Corp.*,
   687 F. Supp. 369 (N.D. Ill. 1988) ................................................................................ 7

*Warner Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) ....................................................................................................... 5

**Statutes and Codes**

35 U.S.C. § 252 ...................................................................................................................6

35 U.S.C. § 307 ...................................................................................................................6

Fed. R. Civ. P. 56(c) ...........................................................................................................5

**Other**

Donald S. Chisum, *Chisum on Patents* § 11.07[4][f][ii] (2009).......................................6

## PRELIMINARY STATEMENT

General Electric ("GE") submits this Memorandum in support of its motion for partial summary judgment of no liability prior to the issuance of the reexamination certificate for the sole patent-in-suit, U.S. Patent No. 5,245,282 ("the '282 patent").  GE's motion is based on the indisputable public record of the Patent Foundation's words and actions before the United States Patent and Trademark Office ("USPTO") and does not depend on the Court adopting any particular claim construction.

In May 2009, the USPTO granted GE's request to reexamine the '282 patent.  During the recently-concluded reexamination proceeding, the Patent Foundation submitted an Amendment to the USPTO and asked the Examiner to cancel a dependent claim in order to overcome the Examiner's prior art rejections.  The Patent Foundation explicitly surrendered coverage for methods that use a "magnetization recovery period" of time zero – even though the original '282 patent unambiguously claimed coverage of those methods.  In reliance on the arguments made in the Patent Foundation's Amendment, the Examiner cancelled the dependent claim, allowed the narrowed claims and issued a reexamination certificate.

As a matter of law, the Patent Foundation's actions before the USPTO made a substantive change to the scope of the reexamined claims, as compared to the original claims of the '282 patent.  In these circumstances, 35 U.S.C. § 307 and governing Federal Circuit law shield accused infringers from alleged liability for actions taken before the issuance of the reexamination certificate.  Accordingly, GE is entitled to partial summary judgment of no liability prior to the issuance of the reexamination certificate on May 4, 2010.

**FACTUAL BACKGROUND**

    A.    **The Original '282 Patent Is Directed to MRI Pulse Sequence Cycles Containing a "Magnetization Recovery Period."**

Plaintiff University of Virginia Patent Foundation ("the Patent Foundation") purports to be the assignee of the '282 patent, issued September 14, 1993 and entitled "Three-Dimensional Magnetic Resonance Imaging." (Dkt. No. 29 at ¶ 8). Magnetic resonance imaging or "MRI" is used by health care professionals to create images of the internal structures and processes of the human body. GE is a longstanding global leader in the field of medical imaging and has had MRI products on the market since the 1980s.

The '282 patent does not purport to claim MRI scanning or imaging hardware, which GE and other industry leaders have supplied to doctors and hospitals for several decades. Instead, the '282 patent claims a specific "pulse sequence cycle" method that can be used in MRI imaging. Anderson Decl., Exh. A. at 22:7-25. A pulse sequence cycle as claimed in the '282 patent consists of a "magnetization preparation period," a "data acquisition period," and a "magnetization recovery period." The original '282 patent contains a single independent method claim (claim 1) and 43 dependent claims (claims 2-44). Independent claim 1 recites:

> 1. In a method for producing a set of magnetic resonance three-dimensional image data, a preparation-acquisition-recovery pulse sequence cycle comprising the steps of:
>     a--a magnetization preparation period in which a series of at least one of RF pulses, gradient field pulses, and time delays are applied to encode the desired contrast properties in the form of longitudinal magnetization,
>     b--a data acquisition period, said data acquisition period including at least two repetitions of a gradient echo sequence to acquire data for a fraction of k-space,
>     c--a magnetization recovery period which allows T1 and T2 relaxation before the start of the next sequence cycle, and
>     d--repeating steps a, b and c until a predetermined k-space volume is sampled.

*Id.*

Step (c) of claim 1 recites a "magnetization recovery period." According to the specification, there is a range of alternatives for the duration of the magnetization recovery period. *Id.* at 15:10-21. The '282 patent specification repeatedly indicates that the magnetization recovery period recited in claim 1 can have a time of zero. *See id.* at 2:22-23 ("The magnetization recovery period can have a time of zero"), 15:18-21 ("zero duration") *and* 18:13 ("recovery: none"). Claim 4 of the original '282 patent, which is dependent on claim 1 and therefore covers a subset of the methods covered by that independent claim, recites: "[t]he method of claim 1, wherein said magnetization recovery period has a time of zero." *Id.* at 22:31-32.

    B.    **The Patent Foundation Amended the '282 Patent During Reexamination to Overcome the Examiner's Rejection of Claims as Invalid in Light of Prior Art.**

On March 13, 2009, GE filed a request with the USPTO for *ex parte* reexamination of the '282 patent. Anderson Decl., Exh. B. GE's request stated that multiple prior art references, including prior art not considered by the USPTO during the initial examination proceedings, render the asserted claims of the '282 patent invalid as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103. On May 6, 2009, the USPTO granted the request for reexamination, finding that the prior art submitted by GE raised one or more substantial new questions of patentability regarding every claim at issue in GE's request for reexamination (claims 1-13, 15-19, 22, 26-39, 41-42 and 44). Anderson Decl., Exh. C. On October 1, 2009, the USPTO issued an Office Action rejecting all of the claims subject to reexamination. Anderson Decl., Exh. D. In particular, the Examiner found claim 1 to be invalid as anticipated under 35 U.S.C. § 102 by multiple prior art references, and also to be invalid as obvious under 35 U.S.C. § 103 on multiple grounds. After the USPTO's rejection of the asserted claims of the

'282 patent as invalid in light of prior art, the parties filed a joint stipulation on November 6, 2009 to stay all proceedings in this case pending the reexamination proceedings. (Dkt. No. 89.)

On November 12, 2009, representatives of the Patent Foundation, including trial counsel in this case, met with the Examiner and other USPTO personnel. Anderson Decl., Exh. E. The Patent Foundation provided a draft response to the Office Action in advance of the interview. *Id.* at p. 2 *and* Anderson Decl., Exh. F (draft response). Consistent with the USPTO's procedures in an *ex parte* reexamination, GE representatives were not present for the interview but the Examiner's summary of the interview was made part of the reexamination history file. According to the Examiner's summary, during the interview, the Patent Foundation argued that the claimed invention differed from the prior art by the inclusion of the "magnetization recovery period" as recited in step (c) of claim 1. Anderson Decl., Exh. E at 2. The Examiner further stated that the interview addressed "the scope of claim 1 – specifically, what is the duration of the recovery period in light of claim 4, which limits the duration to 'zero.'" *Id.*

On November 30, 2009, the Patent Foundation filed an Amendment under 37 C.F.R. § 1.111 and § 1.550 to the claims of the '282 patent. Anderson Decl., Exh. G. In its Amendment, the Patent Foundation advocated a specific construction of the "magnetization recovery period" claim phrase used in step (c) of claim 1, arguing for the first time that "the scope of step (c) of claim 1 … precludes an embodiment wherein the magnetization recovery period is zero or none." *Id.* at 12-14. The Amendment also requested cancellation of claim 4 (dependent on claim 1), contending that the cancellation would address the Examiner's statements about "the scope of claim 1 raised at the interview." *Id.* at 12. The Patent Foundation further argued that, in light of its newly-declared position on the limited scope of "a magnetization recovery period" recited in claim 1 and the cancellation of claim 4, the Patent

Foundation could now overcome the Examiner's invalidity rejections based on the prior art.  *Id.* at 19-53.

On January 28, 2010, the USPTO issued a Notice of Intent to Issue *Ex Parte* Reexamination Certificate, cancelling claim 4, confirming claims 1-3, 5-13, 15-19, 22, 26-39 and 44, and making amendments to claims 41 and 42.  Anderson Decl., Exh. H.  On March 9, 2010, the parties filed a stipulation to lift the stay in this case.  (Dkt. No. 92.)

On May 4, 2010, the USPTO issued a Reexamination Certificate for the '282 patent.  Anderson Decl., Exh. I.

## ARGUMENT

I.  **PARTIAL SUMMARY JUDGMENT IS APPROPRIATE.**

Summary judgment in a patent case, as in any other case, is appropriate where "there is no genuine issue as to any material fact and … the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Warner Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39, n.8 (1997).  Determination of the scope of a patent owner's rights under a patent is a matter of law for the Court to decide, and therefore whether the changes made during reexamination bar liability for the period before the issuance of a reexamination certificate is an appropriate issue for summary judgment.  *Bloom Eng'g, Co., Inc. v. North Am. Mfg. Co., Inc*., 129 F.3d 1247, 1248 (Fed. Cir. 1997) (affirming summary judgment of no liability prior to issuance of reexamination certificate); *Cerner Corp. v. Visicu, Inc.*, 667 F. Supp. 2d 1062, 1076 (W.D. Mo. 2009) (granting partial summary judgment of no liability prior to issuance of reexamination certificate); *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.,* 552 F. Supp. 2d 620, 626 (N.D. Tex. 2008) (same).

## II. THE PATENT ACT SHIELDS GE FROM ALLEGED LIABILITY FOR ACTIVITIES UNDERTAKEN BEFORE THE ISSUANCE OF THE REEXAMINATION CERTIFICATE IN THIS CASE.

### A. When the Scope of a Patent Claim Is Substantively Changed During Reexamination, There Can Be no Liability for Alleged Infringement Prior to the Issuance of the Reexamination Certificate.

35 U.S.C. § 307(b) governs the effect of a certificate of reexamination. In relevant part, Section 307(b) shields from liability those accused of infringing a patent whose scope is substantively changed during reexamination:

> Any proposed amendment or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation for the same, prior to issuance of a certificate under the provisions of subsection (a) of this section.

35 U.S.C. § 307(b); *Bloom Eng'g,* 129 F.3d at 1249; *see also* Donald S. Chisum, *Chisum on Patents* § 11.07[4][f][ii] (2009).[1]

If the patent owner makes substantive changes in the claims during reexamination, an irrebuttable presumption is created that the original claims are invalid and therefore cannot be asserted against accused infringers. *Neupak, Inc. v. Ideal Mfg. and Sales Corp.*, 41 Fed. Appx. 435, 442 (Fed. Cir. 2002); *Bloom Eng'g*, 129 F.3d at 1249. "Policy considerations argue against

---

[1] Section 307(b) expressly incorporates and makes applicable to reexamined patents the provisions in 35 U.S.C. § 252. Section 252, which pertains to reissued patents, states:

> A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.

granting retroactive effect to *all* reexamined claim amendments.  Denying retroactive effect to substantially narrowed claim amendments discourages patent applicants from making overly broad claims on their original applications and counting on the reexamination process to later identify their narrow, valid claims." *Oak Indus. v. Zenith Elec. Corp.*, 687 F. Supp. 369, 373 (N.D. Ill. 1988) (emphasis in original).  Hence, unless the scope of the claims confirmed upon reexamination is "identical" – i.e., without "substantive change" – to the scope of the original claims, there can be no liability for activities that occurred before issuance of the reexamination certificate.  *Bloom Eng'g*, 129 F.3d at 1250; *Engineered Data Prods., Inc. v. GBS Corp.*, 506 F. Supp. 2d 461, 466-67 (D. Colo. 2007).

To determine whether substantive changes were made during reexamination, the Federal Circuit "look[s] to whether the scope of the amended claim[s] is identical to that of the original claim[s], regardless of whether different words are used." *Neupak*, 41 Fed. Appx. at 442; *see also Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998).  Because the legal question is *not* whether the words of the claims are identical, but rather whether the scope of the claims changed, "[t]here is no absolute rule" for determining whether claims are substantively changed.  *Bloom Eng'g*, 129 F.3d at 1250.  "Determination of whether a claim change during reexamination is substantive requires analysis of the scope of the original and reexamined claims in light of the specification, with attention to the references that occasioned the reexamination, as well as the prosecution history and any other relevant information." *Id.*  The patent owner's arguments regarding claim scope before the USPTO have the same effect whether or not those arguments include a formal claim amendment.  *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999) ("Arguments made during the prosecution of a patent application are given the same weight as claim amendments.").

B. **The Patent Foundation Substantively Narrowed All of the Patent Claims During Reexamination.**

1. Claim 1 of the Original '282 Patent Covered Embodiments Where the Magnetization Recovery Period Has a Time of Zero.

The original '282 patent makes it clear in at least four places that the original scope of claim 1 covered methods where the magnetization recovery period has a duration of time zero.[2] First, the "Summary of the Invention" in the '282 patent states: "[a] magnetization recovery period is provided which allows T1 and T2 relaxation before the start of the next sequence cycle. The magnetization recovery period *can have a time of zero*." *Id*. at 2:20-26 (emphasis added). Second, the written description also states that one option for the duration of the magnetization recovery period in claim 1 is "zero duration." *Id*. at 15:18-20. Third, Example III presented in the '282 patent illustrates an embodiment of the invention having a magnetization recovery period of "none." *Id*. at 18:5-14. Fourth, original claim 4, dependent on claim 1, reads: "[t]he method of claim 1, wherein said magnetization recovery period has a time of zero." *Id*. at 22:31-32. Because dependent claim 4 covers the specific case where the recovery period has time zero, its independent claim must cover that specific case as well. "The scope of an independent claim incorporates the embodiments recited in dependent claims." *EMI Group N. Am., Inc. v. Cypress Semiconductor Corp.*, 68 F. Supp. 2d 421, 430 (D. Del. 1999).[3] Here, therefore, the scope of

---

[2] Claim 1 recites in relevant part: "a magnetization recovery period which allows T1 and T2 relaxation before the start of the next sequence cycle." Anderson Decl., Exh. A at 22:20-22.

[3] The same point about dependent and independent claims is often expressed by noting that any embodiment of a dependent claim is also an embodiment of its independent claim, or that infringement of a dependent claim entails infringement of its independent claim. *See, e.g., Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005) ("However, claim 22, which is more limited in scope than claim 21 from which it depends, cannot be infringed when the broader claim 21 is not infringed.") *and Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 92 F. Supp. 2d 483, 485 (E.D. Va. 2000) ("It is well established that where independent claims are not infringed, there can be no infringement of the dependent claims.").

original claim 1 incorporated the embodiments where the magnetization recovery period has a time of zero.

Notably, the logical relationship between the scope of independent claim 1 and dependent claim 4 was raised by the Examiner during his November 12, 2009 *ex parte* interview with representatives of the Patent Foundation. In the Examiner's written summary of that interview he stated: "Discussed the scope of claim 1 – specifically, what is the duration of the recovery period in light of claim 4, which limits the duration to 'zero.'" Anderson Decl., Exh E at 2. Clearly, the Examiner recognized that dependent claim 4, reciting that "said magnetization recovery period has a time of zero," logically implied that the scope of independent claim 1 included the option of a magnetization recovery period of duration zero. For all these reasons, it is clear that the scope of original claim 1 included cases with a magnetization recovery period of time zero.

2. <u>The Patent Foundation's Actions During Reexamination Substantively Changed the Scope of Claim 1 by Surrendering Coverage Where the Magnetization Recovery Period Has a Time of Zero.</u>

During the reexamination of the '282 patent, the Patent Foundation substantively narrowed the scope of claim 1 by surrendering coverage of the originally-claimed option of a magnetization recovery period of time zero. In the USPTO's first Office Action during reexamination, the Examiner rejected as invalid all the claims subject to reexamination. Anderson Decl., Exh. D. In particular, the Examiner found claims 1 and 4 to be invalid as anticipated under 35 U.S.C. § 102 by various prior art references. *Id.*

In response to these prior art rejections, the Patent Foundation narrowed the scope of claim 1. In the Patent Foundation's November 30, 2009 Amendment, submitted after the ex parte interview with the Examiner, it expressly stated to the USPTO for the first time that the magnetization recovery period of claim 1 "precludes an embodiment wherein the magnetization

recovery period is zero or none." Anderson Decl., Exh. G at 14.  That statement disclaiming coverage of a magnetization recovery period of time zero contradicts the named inventors' own statements in at least *four* distinct places in the original written description and claims of the '282 patent, as outlined above.  Hence, the Patent Foundation narrowed the scope of its claims during reexamination.  *Bloom Eng'g*, 129 F.3d at 1251 (where the specification describes more than one method of operation, restriction to a more narrow scope of methods during reexamination is a substantive change) *and Elkay Mfg.*, 192 F.3d at 979 (finding that the patent owner narrowed the scope of patent claims by arguments made to the USPTO).

      Indeed, the Patent Foundation acknowledged that in light of its new position on the scope of claim 1, the additional limitation in original claim 4 – namely a magnetization recovery period of time zero – could not be consistent:  "[s]tated simply, a finite period of time must occur for T1 and T2 relaxation to occur, and thus a magnetization recovery period that has a time of zero is inconsistent with claim 1." Anderson Decl., Exh. G at 12-13.  Consequently, the Patent Foundation requested that original claim 4 be cancelled, in order to resolve the conflict with the narrowed scope of claim 1: "the Patent Owner believes that the cancellation of claim 4 renders moot the entire issue of the scope of claim 1 raised at the interview." *Id.* at 12.

      In *Laitram*, the Federal Circuit found that "the original and reexamined claims are of different scope: the original claims appear to cover a printer or method of printing which generates *any* quality of alphanumeric characters, while the amended claims seem to cover only a printing apparatus or method of printing which generates '*type quality*' alphanumeric characters." 163 F.3d at 1348 (emphasis in original).  Accordingly, the court held that the amendment substantively changed the scope of the claims.  Here, just like in *Laitram*, the original claim 1 purported to cover *any* magnetization recovery period, but after the Patent

Foundation's Amendment, reexamined claim 1 covers only a particular subset – namely, a non-zero magnetization recovery period.  That is a substantive change.

Next, the *Laitram* court went on to examine the context in which the change was made: "Most significantly, however, the addition of the 'type quality' limitation, along with the other amendments, resulted in the allowance of claims that had been rejected in the reexamination proceeding over prior art; this is a highly influential piece of prosecution history."  *Id.*  Here also, the Patent Foundation relied on the narrowing effect of its Amendment in arguing for allowance of the amended claims over the Examiner's previous prior art rejections.  For example, in response to the Examiner's rejection of claim 1 as anticipated by U.S. Patent No. 4,724,301 to van der Meulen et al. ("van der Meulen"), the Patent Foundation argued first that the scope of step (c) of claim 1 was narrowed to exclude a magnetization recovery period of time zero: "step (c) provides a *distinct* magnetization recovery period which allows T1 and T2 relaxation to occur before the start of the next preparation-acquisition-recovery pulse sequence cycle."  Anderson Decl., Exh. G at 30 (emphasis in original).  Then, the Patent Foundation distinguished the prior art as lacking that limitation: "van der Meulen does not disclose a magnetization recovery period which allows T1 and T2 relaxation before the start of the next sequence cycle as recited in step (c) of claim 1 of the '282 patent."  *Id.* at 36.  As the Federal Circuit observed in *Laitram*, the Patent Foundation's reliance on its Amendment in arguing for allowance of the amended claims over prior art rejections should be "a highly influential piece of prosecution history" showing that the Amendment substantively changed the scope of the claims.  *See* 163 F.3d at 1348; *see also Neupak*, 41 Fed. Appx. at 444 (an amendment necessary to distinguish a claim from the prior art is a substantive change in claim scope) *and Abbey v. Bill Ussery Motors, Inc.*, 74 F. Supp. 2d 1217, 1221 (S.D. Fla. 1999) (finding "independent confirmation" that an amendment is

substantive when it is used to overcome the Examiner's initial rejection of a claim in light of newly cited prior art).

Federal Circuit law is clear that 35 U.S.C. § 307 does *not* require the Patent Foundation's Amendment to have changed the wording of claim 1 in order for the Amendment to have substantively changed the scope of that claim. *Laitram*, 163 F.3d at 1346 ("in determining whether substantive changes have been made, we must discern whether the *scope* of the claims are identical, not merely whether different words are used") (emphasis in original). Indeed, it is a general rule that "[a]rguments made to overcome prior art can equally evidence an admission sufficient to give rise to a finding of surrender." *Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1481 (Fed. Cir. 1998). The *Hester* court further stated that "[l]ogically, this is true even when the arguments are made in the absence of any claim amendment. Amendment of a claim is not the only permissible predicate for establishing a surrender." *Id.*; *see also Elkay*, 192 F.3d at 979 ("Arguments made during the prosecution of a patent application are given the same weight as claim amendments."). Finally, determining whether the Patent Foundation's Amendment substantively changed the scope of the claims does not depend on *subjective* intent, but rather on an objective reading of the public record. *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1577-1578 (Fed. Cir. 1993) ("The legal standard for determining what subject matter was relinquished is an objective one, measured from the vantage point of what a competitor was reasonably entitled to conclude, from the prosecution history, that the applicant gave up to procure issuance of the patent.").

Thus, the Patent Foundation's arguments in its November 30, 2009 Amendment surrendering coverage of embodiments where the magnetization recovery period is zero or none,

Anderson Decl., Exh. G at 12-14, substantively changed the scope of claim 1, regardless of whether the wording of claim 1 was changed.

>   3.   The Patent Foundation Substantively Changed the Scope of All Other Claims by Substantively Changing the Scope of Claim 1 and Cancelling Claim 4.

Claim 1 is the only independent claim of the '282 patent. Because the Patent Foundation substantively narrowed the scope of claim 1 by surrendering coverage of a magnetization recovery period of time zero, the remaining dependent claims – which likewise previously covered a magnetization recovery period of time zero – have been substantively changed as well. *See Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 1581 (Fed. Cir. 1987) (because the scope of an independent claim substantively changed during reexamination, the scope of its dependent claims substantively changed as well) *and Abbey*, 74 F. Supp. 2d at 1220 ("If claim 1, the only independent claim, has been substantively changed, so have all the dependent claims."). Here, the only dependent claim of the original '282 patent specifically directed to the duration of the magnetization recovery period is claim 4, now cancelled. Therefore, by surrendering coverage of a magnetization recovery period of time zero in claim 1, the Patent Foundation substantively narrowed all the remaining dependent claims of the '282 patent.

## CONCLUSION

For the foregoing reasons, GE requests that the Court grant its motion for partial summary judgment of no liability prior to the issuance of the '282 patent reexamination certificate on May 4, 2010.

Respectfully Submitted,

DATED:   May 25, 2010                         QUINN EMANUEL URQUHART &
                                                 SULLIVAN, LLP


                                              By: /s/ Victoria Maroulis
                                                  Charles K. Verhoeven (*pro hac vice*)
                                                  charlesverhoeven@quinnemanuel.com
                                                  David Eiseman (*pro hac vice*)
                                                  davideiseman@quinnemanuel.com
                                                  Victoria F. Maroulis (*pro hac vice*)
                                                  victoriamaroulis@quinnemanuel.com

                                              555 Twin Dolphin Drive, Suite 560
                                              Redwood Shores, California  94065
                                              (650) 801-5000 (Telephone)
                                              (650) 801-5100 (Facsimile)

                                              REED SMITH LLP
                                                David T. Pollock (*pro hac vice*)
                                                dpollock@reedsmith.com
                                              101 Second Street
                                              San Francisco, CA, 94105
                                              (415) 659-5620 (Telephone)
                                              (415) 391-8269 (Facsimile)

                                              McGUIRE WOODS LLP
                                                R. Craig Wood, VSB No. 24264
                                                cwood@mcguirewoods.com
                                                Melissa Wolf Riley, VSB No. 43316
                                                mriley@mcguirewoods.com
                                              310 Fourth Street, N.E., Ste. 300
                                              P. O. Box 1288
                                              Charlottesville, VA  22902-1288
                                              (434) 977-2558 (Telephone)
                                              (434) 980-2274 (Facsimile)

                                              Attorneys for Defendant GENERAL
                                              ELECTRIC COMPANY d/b/a
                                              GE HEALTHCARE

## CERTIFICATE OF SERVICE

       I hereby certify that on May 25, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the address listed below:

**BOYLE BAIN REBACK & SLAYTON**
C. Connor Crook
420 Park Street
Charlottesville, Virginia 22902
(434) 979-7900 Telephone
(434) 293-5017 Facsimile

**SHORE CHAN BRAGALONE LLP**
Joseph F. DePumpo
Alfonso G. Chan
Justin B. Kimble
Tim Wang
901 Main St, Suite 3300
Dallas, TX   75202-3710
(214) 593-9100 Telephone
(214) 593-9111 Facsimile


   /s/
Victoria Maroulis