# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNIVERSITY OF VIRGINIA PATENT FOUNDATION,<br><br>        *Plaintiff,*<br>  v.<br><br>GENERAL ELECTRIC COMPANY d/b/a/ GE HEALTHCARE,<br><br>        *Defendant.* | CIVIL NO. 3:08-cv-00025<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon the Motion for Reconsideration (docket no. 167) filed by Plaintiff University of Virginia Patent Foundation ("Patent Foundation"). The Patent Foundation requests reconsideration of this Court's decision dated November 9, 2010 ("Opinion") in which the Court granted partial summary judgment for Defendant General Electric Company d/b/a GE Healthcare ("GE"). The Court has fully considered the arguments and authorities set forth in the parties' filings, as well as those presented at the January 13, 2011 hearing. For the following reasons, the Court will deny the Motion for Reconsideration.

## I. BACKGROUND

The Patent Foundation alleges that GE infringed and continues to infringe United States Patent No. 5,245,282 ("'282 Patent") for an invention entitled "Three-Dimensional Magnetic Resonance Imaging." The '282 Patent discloses an invention of "a rapid process for producing three-dimensional magnetic resonance imaging" through a pulse sequence which is referred to as

3D MP-RAGE. '282 Patent, col. 1, ll. 8-9; *id.* col. 4, ll. 23-26.[1] Claim 1, its only independent claim, provides:

> In a method for producing a set of magnetic resonance three-dimensional image data, a preparation-acquisition-recovery pulse sequence cycle comprising the steps of:
>
> a—a magnetization preparation period in which a series of at least one of RF pulses, gradient field pulses, and time delays are applied to encode the desired contrast properties in the form of longitudinal magnetization,
>
> b—a data acquisition period, said data acquisition period including at least two repetitions of a gradient echo sequence to acquire data for a fraction of k-space,
>
> c—a magnetization recovery period which allows T1 and T2 relaxation before the start of the next sequence cycle, and
>
> d—repeating steps a, b and c until a predetermined k-space volume is sampled.

Claim 4, which is dependent on Claim 1, and was canceled by the Patent Foundation in reexamination, provides:

> The method of claim 1, wherein said magnetization recovery period has a time of zero.

The patent application was granted by the United States Patent and Trademark Office ("PTO") in 1993 in the first office action. In May 2008, the Patent Foundation brought the present action against GE. Subsequently, GE filed a third party request with the PTO for *ex parte* reexamination of the '282 Patent, arguing that certain prior art anticipated or rendered obvious claims 1-13, 15-19, 22, 26-39, 41, 42, and 44 of the '282 Patent. Request for *Ex Parte* Reexamination (Mar. 13, 2009).

I provide a more detailed exposition of the reexamination history here than that provided in the Opinion because it demonstrates the impact that the Patent Foundation's actions during

---

[1] More information on the technology employed in the '282 Patent can be found in the Opinion at 2-4.

reexamination had on the PTO's confirmation of the patentability of Claim 1 of the '282 Patent. In relevant part, GE argued in its request for reexamination that Claim 1 and Claim 4 were unpatentable because they were anticipated by Frahm et al., United States Patent No. 4,707,658 ("'658 Patent"). GE argued that the '658 Patent disclosed a period of 150 milliseconds, which occurs before the start of each subsequent sequence cycle, and during which T1 and T2 relaxation occurs. Request for *Ex Parte* Reexamination at 20. According to GE, the period of 150 milliseconds anticipated the magnetization recovery period in step (c) of Claim 1. *Id.* With respect to Claim 4, GE argued that both Claim 4 and the '658 Patent disclose the "elimination" of the magnetization recovery period. *Id.* at 23. GE also argued that Claim 1 was anticipated by Van der Meulen et al., United States Patent No. 4,742,301 ("'301 Patent") because the '301 Patent disclosed a pulse sequence containing delays that would allow for T1 and T2 relaxation. *Id.* at 37.

The request for reexamination also stated that Claim 4, "by setting the magnetization recovery period to zero, . . . excised the magnetization recovery period" from Claim 1, leaving only the magnetization preparation period (step (a)) and the data acquisition period (step (b)), to be repeated until a volume is sampled and imaged (step (d)). *Id.* at 62. Without a recovery period, GE asserted that Claim 4 was obvious in light of prior art that disclosed elements of steps (a), (b), and (d). *Id.* at 62-64 (obvious in light of A. Haase, *Snapshot FLASH MRI. Applications to T1, T2, & Chemical-Shift Imaging*, 13 MAGNETIC RESONANCE IN MED. 77 (1990) ("Haase")); *id.* at 68 (obvious in light of David Norris et al., *3D Flow Imaging With Snapshot FLASH*, 8 Supp. 1 MAGNETIC RESONANCE IMAGING, SMRI EIGHTH ANNUAL MEETING PROGRAM & ABSTRACTS (1990) ("Norris")).

The PTO granted the request for reexamination because it raised substantial new questions of patentability. *See* PTO, Order Granting Reexamination of U.S. Patent 5,245,282 (May 6, 2009) (finding that the '658 Patent raised a substantial new question of patentability for Claim 1 and Claim 4, *inter alia*; finding that the '301 Patent raised a substantial new question of patentability for Claim 1; finding that Haase raised a substantial new question of patentability for Claim 4; finding that Norris raised a substantial new question of patentability for Claim 1 and Claim 4). Upon reexamination, the PTO rejected all of the claims in question, including Claim 1 and Claim 4. *See* PTO, Reexamination of U.S. Patent 5,245,282 (Oct. 1, 2009). The PTO incorporated by reference portions of GE's request for reexamination as its own rationale for the rejection, including those passages cited above. *Id.* Specifically, the PTO rejected Claim 1 and Claim 4 as being anticipated by the '658 Patent, Claim 1 as being anticipated by the '301 Patent, Claim 4 as being rendered obvious by Haase, and Claim 1 and Claim 4 as being rendered obvious by Norris. *Id.*

In response to the PTO's rejection of the reexamined claims, the Patent Foundation prepared a draft response for use for discussion purposes only at the interview with the PTO. In that draft response, the Patent Foundation argued that Claim 4, which disclosed the method of Claim 1 but with a magnetization recovery period of time zero, was patentable over the '658 Patent and Norris. *See* Pl.'s Draft Response Under 37 C.F.R. § 1.111 and § 1.550 at 6, 33 (Nov. 10, 2009).

The interview between the Patent Foundation and the PTO occurred on November 12, 2009, and in its summary of the interview, the PTO stated they "[d]iscussed the scope of claim 1—specifically, what is the duration of the recovery period in light of claim 4, which limits the duration to 'zero.'" PTO, *Ex Parte* Reexamination Interview Summary (Nov. 14, 2009). In

the Patent Foundation's summary of the interview, it stated, "The examiner raised the issue that the scope of claim 4 wherein the magnetization recovery period is recited as having 'a time of zero' is unclear as it relates to the scope of the magnetization recovery period in claim 1, step (c). Specifically, the Examiner questioned whether claim 4 was meant to recite that there is no step (c)." Pl.'s Amendment Under 37 C.F.R. § 1.111 and § 1.550 and Written Statement of Examiner Interview Under 37 CFR § 1.560(b), at 12 (Nov. 30, 2009) ("Pl.'s Amendment").

The Patent Foundation then filed an Amendment under 37 C.F.R. § 1.111 and § 1.550 canceling Claim 4 and making an amendment to Claim 41. The Patent Foundation explained that it canceled Claim 4 "because it does not properly depend from claim 1 because a 'magnetization recovery period [that] has a time of zero' does not 'allow[s] T1 and T2 relaxation before the start of the next sequence cycle,' as required by the magnetization recovery period of claim 1. Stated simply, a finite period of time must occur for T1 and T2 relaxation to occur, and thus a magnetization recovery period that has a time of zero is inconsistent with claim 1 . . . ." Pl.'s Amendment at 12-13 (alterations in original).

Having stated that the magnetization recovery period must be a finite period of time, *i.e.*, greater than zero, the Patent Foundation proceeded to distinguish the '282 Patent from prior art on the basis of the existence of a magnetization recovery period that allows T1 and T2 relaxation. It argued that Claim 1 was valid over the '658 Patent because the '658 Patent "lacks the claimed 'magnetization recovery period which allows T1 and T2 relaxation before the start of the next sequence cycle,' and thus cannot anticipate claim 1." *Id.* at 27; *see also id.* at 23-30. The Patent Foundation's first argument for confirming Claim 1 over the '301 Patent was that the '301 Patent lacked a distinct magnetization recovery period. *Id.* at 30. The Patent Foundation

also sought to differentiate Claim 1 of the '282 Patent from Norris on the basis that Norris "does not disclose the claimed magnetization recovery period." *Id.* at 51 (quotations omitted).

Based on the Patent Foundation's response, the PTO withdrew all of its rejections of the claims (except for those pertaining to the canceled Claim 4) and issued the reexamination certificate on May 4, 2010. PTO, Notice of Intent to Issue *Ex Parte* Reexamination Certificate and Statement of Reasons for Patentability and/or Confirmation (Jan. 28, 2010) ("Statement of Reasons for Patentability"). In its statement of reasons for patentability, the PTO declared that "the claimed 'magnetization recovery period' is interpreted to correspond to a finite period of time (i.e., greater than zero) that allows substantially complete T1 and T2 relaxation to occur— i.e., relaxation to thermal equilibrium of both the longitudinal component and the transverse component—as opposed to partial or substantially incomplete relaxation." *Id.* at 3. In its finding that the '658 Patent did not anticipate Claim 1 of the '282 Patent, the PTO identified as the "only apparent issue" whether the 150-millisecond period disclosed in the '658 Patent corresponded to the magnetization recovery period in Claim 1 of the '282 Patent. *Id.* at 4. The PTO concluded that it did not because it did not necessarily allow for "substantially complete T1 and T2 relaxation." *Id.* at 6. With respect to its rejection of Claim 1 as anticipated by the '301 Patent, the PTO withdrew the rejection because the '301 Patent "does not appear to disclose a magnetization recovery period, after the data acquisition period, that allows T1 and T2 relaxation to occur." *Id.* at 7. Finally, with respect to its rejection of Claim 1 as rendered obvious by Norris, the PTO withdrew the rejection because "Norris does not appear to disclose a

magnetization recovery period, as claimed, and does not otherwise inherently induce complete T1 and T2 relaxation as claimed." *Id.* at 8.[2]

After reexamination concluded, GE moved for partial summary judgment, requesting a finding of no liability for any infringement that occurred prior to the issuance of the reexamination certificate. The parties also requested that the Court perform claim construction to resolve the meaning of disputed terms in the '282 Patent. In the Opinion, I determined that from the period of the patent's filing date to its reexamination, the term "magnetization recovery period," encompassed the possibility of having a duration of zero. I then held that the Patent Foundation's arguments in reexamination and its cancellation of Claim 4 operated as a clear disclaimer of the possibility of the recovery period being zero and effectively narrowed the scope of the claim without explicitly amending its language. After I found that the meaning of "magnetization recovery period" was changed in reexamination, I proceeded to hold that the change was substantive, and, pursuant to 35 U.S.C. §§ 307(b) and 252, that the Patent Foundation was precluded from collecting for infringement of Claim 1 prior to the issuance of the reexamination certificate. Accordingly, I granted GE's motion for partial summary judgment, which sought a judgment of no liability on all claims of infringement prior to reexamination.

## II. STANDARD OF REVIEW

A court may reconsider a nonfinal judgment. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence," and because of the interest in finality, "courts should grant motions for

---

[2] The Patent Foundation promptly responded to the PTO's statement, challenging the PTO's reasons for patentability, urging that the magnetization recovery period in Claim 1 need only allow "partial T1 and T2 relaxation to occur," not substantially complete T1 and T2 relaxation. Pl.'s Comments on Statement of Reasons for Patentability and/or Confirmation at 2 (Mar. 1, 2010). The PTO did not respond to that argument.

reconsideration sparingly." *Dayoub v. Penn-Del Directory Co.*, 90 F. Supp. 2d 636, 637 (E.D. Pa. 2000) (citations and quotations omitted); *see also Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005) ("A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence."); *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998) ("The major grounds justifying reconsideration of interlocutory orders are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (citing *Pet. of U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973)).

A motion to reconsider may also be appropriate where the Court has misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error of apprehension. *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). A controlling or significant change in the law or the facts also provides a potential basis for a motion for reconsideration. *Id.* A motion to reconsider is inappropriate where it merely reiterates previous arguments. *Id.* (denying a motion to reconsider that improperly "ask[ed] the Court to rethink what the Court had already thought through—rightly or wrongly").

### III. DISCUSSION

At the outset, I observe that the Patent Foundation's basis for bringing the motion for reconsideration is to correct allegedly clear errors in law in the Opinion. The Patent Foundation has supplied no newly discovered evidence or pointed to any intervening changes in the law or facts. Instead, it directs the Court to reconsider certain aspects of its Opinion, primarily: the

construction of the term "magnetization recovery period," and the application of 35 U.S.C. § 307(b) to this matter. For the large part, the motion reiterates arguments that the Patent Foundation previously made in the briefing and argument on claim construction and on GE's motion for partial summary judgment. I already heard and carefully considered those arguments, and do not see any basis for reversing my earlier decision.

**A.**

I will address first the Patent Foundation's attack on the construction I gave to the term "magnetization recovery period," which is found in Claim 1 of the '282 Patent. In the previous briefing, the Patent Foundation asserted that the magnetization recovery period should be construed as having a finite period of time, rather than encompassing the possibility of having a duration of time zero. The Patent Foundation emphasized that Claim 1 states that the magnetization recovery period "allows T1 and T2 relaxation," and no relaxation would occur if the recovery period had a time period of zero. *See* Opinion 13. Although I acknowledged that the Patent Foundation's interpretation might be persuasive if read in isolation from the other claims and the specification, I rejected that interpretation and adopted the construction that, at the time the patent was filed, the magnetization recovery period encompassed the possibility of a time of zero. *See* Opinion 14-15. In other words, I found that the recovery period was optional because it could last for zero seconds. As I explained in the Opinion, I based my interpretation that the recovery period could have a value of zero on the language of Claim 4, which limits Claim 1 to where the recovery period has a time of zero; on the clear statements in the specification that the time of the recovery period may be zero; and on one of the preferred embodiments, which has no recovery period. *See* Opinion 13.

Now the Patent Foundation asserts that construction was clear error because it "ignored the plain language of claim 1" and "the context of the surrounding words of the claim." (Pl.'s Mot. Reconsid. 12.) But the law requires me to ascribe to the claim term the meaning that would have been accorded it by a person of ordinary skill in the art, who would have read the claim in light of the entire intrinsic record, including the specification. *See Nystrom v. TREX Co.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005); *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1357 (Fed. Cir. 2006) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)). I see no basis for reversing my earlier construction.

The Patent Foundation raises several other reasons why "magnetization recovery period" should be construed to exclude a time of zero, but those contentions are easily dismissed. First, I did not construe the "magnetization recovery period" "to cover every possible embodiment" in the patent (*see* Pl.'s Mot. Reconsid. 13), I only considered the disclosure of an embodiment with a recovery period of time zero as one piece of evidence supporting my interpretation. *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) (stating that a proposed claim interpretation that would exclude a preferred embodiment would rarely, if ever, be correct).

Second, the Patent Foundation argues that construing the claim to make the recovery period optional "could" render Claim 1 indefinite and therefore invalid, and it is a rule of patent construction to avoid construing a claim so that it would be invalid. (*See* Pl.'s Mot. Reconsid. 14-15.) But the Patent Foundation does not argue that such a construction *would* render the claim invalid, and there has been no suggestion or showing that the existence of an optional magnetization recovery period makes the claim "insolubly ambiguous" so as to make it indefinite. *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008); *see also* Manual of

Patent Examining Procedure § 2173.05(h)(III) (8th ed. 2001, rev. July 2010).  Moreover, the United States Court of Appeals for the Federal Circuit has held that considering validity would be improper where ordinary claim construction tools resolve the dispute, as they do here. *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1304 (Fed. Cir. 2005).

Finally, the Patent Foundation argues that a magnetization recovery period of time zero is inconsistent with dependent Claim 44, which provides "[t]he method of claim 1, wherein said time period employed for magnetization recovery is also employed for magnetization preparation." (*See* Pl.'s Mot. Reconsid. 15-16.)  As I explained in the Opinion, Claim 44 encompasses embodiments in which the magnetization recovery period of one cycle overlaps with the magnetization preparation period of the succeeding cycle. *See* Opinion 27.  Claim 1 covers embodiments having a broad range of non-zero recovery period values, such as those disclosed in Examples I, II, and IV of the '282 Patent.  Claim 44 remains applicable to embodiments having recovery periods in that broad range of non-zero values.  It is only embodiments having a zero recovery period where no overlap would exist and Claim 44 would be inapplicable.  Accordingly, there is no inconsistency between Claim 44 and my interpretation of Claim 1.

### B.

The Patent Foundation asserts that the Court erred in holding that, in reexamination, the Patent Foundation disclaimed the possibility of the magnetization recovery period encompassing a time of zero.  Statements made by the patent holder during prosecution must be "clear and unmistakable" to constitute a disclaimer. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003).  Claim scope can be disclaimed during reexamination or reissue

proceedings as well. *See CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1362-63 (Fed. Cir. 2007) (affirming district court holding that arguments, made by patentee in reexamination to distinguish claims from prior art, narrowed scope of claims in question); *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452-53 (Fed. Cir. 1985) (affirming district court holding that applicant for reissue patent disclaimed use of metallic copper in claim coverage). The Patent Foundation contends that it made no "clear and unmistakable" disavowal of the scope of Claim 1 during reexamination. The Patent Foundation adds, citing no authority in support, that to disavow an interpretation of a claim, it must have originally intended the claim to have that interpretation, and with respect to the instant patent the Patent Foundation never took the position that the magnetization recovery period is optional.

The Patent Foundation's submissions in this litigation belie its assertions that it never took the position that the magnetization recovery period is optional, that it never intended the magnetization recovery period to be an optional step in the method of Claim 1, and that it "consistently maintained" that the magnetization recovery period could not be optional. In its asserted claims and infringement contentions regarding the '282 Patent on June 5, 2009, the Patent Foundation asserted that GE infringed Claim 4, which is a properly dependent and valid claim only if Claim 1 encompasses embodiments having a recovery period of time zero. Moreover, an exhibit that was attached to the Patent Foundation's asserted claims and infringement contentions repeatedly references the magnetization recovery period as "optional." *See* Ex. 2 to docket no. 173, at 2, 8, 11, 13.[3] Even after the PTO rejected Claim 4 in reexamination on the basis that it "excised the magnetization recovery period" from Claim 1, the

---

[3] Contrary to the Patent Foundation's arguments, it did have notice well before it cancelled Claim 4 that the magnetization recovery period could be viewed as optional. The Request for *Ex Parte* Reexamination, filed on March 13, 2009, clearly contemplated the consequences of setting the magnetization recovery period to zero, as Claim 4 discloses. *See* Request for *Ex Parte* Reexamination at 62-64, 68 (incorporated by reference by the PTO).

Patent Foundation still insisted in a draft response to the rejections that Claim 4 was patentable over prior art. Pl.'s Draft Response Under 37 C.F.R. § 1.111 and § 1.550 at 33. It was not until after the interview between the Patent Foundation and the PTO, during which the PTO expressed concern about the duration of the magnetization recovery period, that the Patent Foundation first took the position, in its formal response to the rejections, that the recovery period could not be zero. This sequence of events demonstrates that the Patent Foundation intended the recovery period to be optional and sought to collect for damages for infringement of Claim 4 until it changed its approach after the interview with the PTO.

The Patent Foundation's amendments and arguments in reexamination clearly and unmistakably disavowed that the magnetization recovery period could have a value of zero. *See* Pl.'s Amendment at 12-14; *id.* at 13 ("the specific magnetization recovery period recited in step (c) of claim 1 of the '282 patent must be a finite period because it must allow for T1 and T2 relaxation to occur."). Claim 4 was also canceled because it specified a duration of zero for the recovery period. *See id.* at 12; *cf. Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) (ruling that scope of patent in suit did not cover a chemical compound because the patentee cancelled a claim covering that compound and expressly disclaimed that compound in its arguments to the PTO to gain patent allowance).

Separately, the Patent Foundation challenges the propriety of the Court's different constructions of "magnetization recovery period" for (1) the period between the patent's filing date and the date of the reexamination certificate, and (2) the period following reexamination. I believe that such an approach is warranted here. The reexamination occurred eighteen years after the '282 Patent was filed. During the period from the patent's filing to its reexamination, the public record of the '282 Patent, upon which the public has the right to rely and make

business decisions, disclosed a pulse sequence with an optional magnetization recovery period. *Cf. Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) (stating importance of maintaining ability of public to rely upon public record of patent). To allow the claims as construed only as a result of the amendment and disclaimer made during reexamination to reach back to the patent's filing date would undercut the public's right to rely on the public record.

## C.

Finally, the Patent Foundation requests that I reconsider my decision that 35 U.S.C. § 307(b) applies to this matter. Section 307(b) governs the effect of a reexamined patent on alleged infringers during the period prior to issuance of the reexamination certificate. It states:

> *Any proposed amended or new claim* determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation for the same, prior to issuance of a certificate under the provisions of subsection (a) of this section.

35 U.S.C. § 307(b) (emphasis added).

Thus, § 307(b) provides that the rules established in 35 U.S.C. § 252 for reissued patents apply to reexamined patents. *See Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997). Correspondingly, § 252 provides that a cause of action for infringement of a patent during the period before the date of the issuance of the reexamined patent survives only if the claims of the original and reexamined patents are "substantially identical." *Id.* The statute relieves those who may have infringed the original claims from liability during the period before the claims are changed. *Id.* I held in the Opinion that the effective narrowing of Claim 1 to

exclude coverage of a sequence having a magnetization recovery period of time zero changed the scope of the claim in a substantive way, and that therefore the Patent Foundation could not maintain its cause of action for infringement prior to the issuance of the reexamined patent.

Section 307(b) is triggered by "[a]ny proposed amended or new claim" incorporated into a patent following reexamination. The Patent Foundation argues, as it did previously, that the term "amended" requires explicitly changing the wording of a claim in reexamination, and that the wording of Claim 1 was never explicitly changed. Whether the term "amended" limits the application of § 307(b) to only explicit wording changes, as opposed to changes through other means—such as prosecution disclaimer—appears to be an issue of first impression. No reexamination case law on this topic has been located, and the parties have supplied no definitive evidence bearing on Congress's intent.

On the particular facts presented in this case, I held that the Patent Foundation's disclaimer by statements it made in reexamination, together with its cancellation of Claim 4, operated to "amend" Claim 1 within the meaning of the statute. *See* Opinion 43-44. I rested on the fact that the Patent Foundation unilaterally sought and obtained a patent that included an optional magnetization recovery period. *Id.* at 43. I observed that it was not until the PTO rejected Claim 1 and Claim 4 (among other claims), and expressed confusion regarding the scope of the magnetization recovery period, that the Patent Foundation canceled Claim 4 and made statements clearly specifying that the recovery period must last for a finite length of time. *Id.* at 43-44. Rather than explicitly amending Claim 1 to recite that the recovery period must be finite, which indisputably would trigger § 307(b), the Patent Foundation was able to accomplish the same narrowing of Claim 1's scope by disavowing the possibility of a recovery period of time zero and by canceling Claim 4. *Id.* at 44. This change was necessary to secure the issuance of

the reexamination certificate. The PTO relied on the existence of a non-zero magnetization recovery period to distinguish Claim 1 of the '282 Patent over prior art. *Id.*[4]

The Patent Foundation has provided no reason to believe that my prior interpretation of § 307(b) was in error, so I decline to reverse it. Section 307(b) was intended to reach instances where the patent holder effects a change in claim scope in reexamination to secure its validity over prior art while avoiding an explicit change in wording. Although there appears to be little legislative history on this provision, my interpretation is at least consistent with the House Report, which states:

> Subsection 307(b) provides intervening rights similar to those provided by patent law section 252 with respect to reissued patents. Thus, a person practicing a patented invention would not be considered an infringer *for the period between issuance of an invalid patent and its conversion through reexamination to a valid patent*.

*Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 1579 (Fed. Cir. 1987) (quoting H.R. REP. NO. 96-1307 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6467) (emphasis modified). Although here no amendment was made, the Patent Foundation's actions obtained the "conversion through reexamination" of the '282 Patent to a valid patent.

In its elaboration of the "substantive change" standard governing reexamined patents, the Federal Circuit has emphasized that where limitations made to a patent by amendment "resulted in the allowance of claims that had been rejected in the reexamination proceeding over prior art," a substantive change in the claim scope is typically (though not necessarily) found. *See Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998). It is unlikely that Congress would

---

[4] As the reexamination history shows, in its formal response to the PTO's rejection of Claim 1, the Patent Foundation argued that the existence of a non-zero magnetization recovery period distinguished the pulse sequence in Claim 1 of the '282 Patent from the '658 Patent, the '301 Patent, and Norris. The PTO expressly rested on the existence of a non-zero magnetization recovery period to justify withdrawal of its rejections of Claim 1, and its subsequent confirmation of Claim 1.

shield infringers from liability where there has been an explicit change in claim language, but not where argument and the cancellation of a dependent claim changes the meaning of the claim.

I also take guidance from Federal Circuit law on claim construction. Under that body of law, prosecution disclaimer that is clear and unmistakable is treated as the equivalent of an amendment for the purpose of determining the meaning of a disputed term. *See Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999) (stating that the totality of the prosecution history must be considered and reasoning that "it is irrelevant whether [the inventor] relinquished [a] potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference"); *Southwall Techs. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("*Arguments and amendments* made during the prosecution of a patent application and other aspects of the prosecution history, as well as the specification and other claims, must be examined to determine the meaning of terms in the claims.") (emphasis added); *Standard Oil Co.*, 774 F.2d at 452 ("[T]he prosecution history . . . includes . . . amendments to the claims and arguments made to convince the examiner that the claimed invention meets the statutory requirements of novelty, utility, and nonobviousness. Thus, the prosecution history . . . limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance."). While the foregoing cases are not reexamination cases, the rationale underlying them further buttresses my decision by demonstrating that arguments to the PTO can just as effectively limit claim scope as explicit amendments.

### IV. CONCLUSION

For the reasons set forth above, the motion for reconsideration will be denied. An appropriate order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this __8th__ day of February, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE